IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HUGO ZUNIGA | : | CIVIL ACTION |
| [DN-5007] | : | |
| | : | |
| v. | : | |
| | : | |
| PA. BOARD OF PROBATION AND | : | |
| PAROLE, et al. | : | NO. 05-5517 |

**REPORT AND RECOMMENDATION**

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE                    February 2, 2007

Presently before this Court is a *pro se* Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner.  Petitioner is currently incarcerated at State Correctional Institution ["SCI"] Frackville, Pennsylvania, where he is serving a seven to eighteen year sentence for indecent deviate sexual intercourse and related offenses.  For the reasons which follow, it is recommended that Mr. Zuniga's habeas claims be denied and dismissed without an evidentiary hearing.

**I.  BACKGROUND**[1]

**A.  Procedural history**.

On December 5, 1997, following a jury trial before the Honorable Webster D. Keogh of the Court of Common Pleas of Philadelphia County, Petitioner was convicted of involuntary

---

[1]      In preparing this Report and Recommendation, I have reviewed the following documents: Mr. Zuniga's habeas petition and brief in support, Petitioner's amendment to his habeas petition, the Attorney General's response to the parole related claims, the District Attorney's response to the conviction related claims, the parties' additional replies and motions, and the state court records.

deviate sexual intercourse, attempted deviate sexual intercourse, indecent assault, corruption of

minors, and indecent assault. *State Court Records:* Docket Entries at 12/5/97.[2]

The underlying facts as recited by the trial court are as follows:

> [The victim] testified that from age seven until approximately age fourteen, she was sexually assaulted by the [Petitioner]. She testified that the [Petitioner] was her father's best friend, and he lived with her family for a number of years. Even after the [Petitioner] moved out of her family's home, he continued to have a great deal of contact with them. During the course of her testimony, [the victim] recalled numerous examples of sexual abuse she suffered at the hands of the [Petitioner]. For example, she testified about an incident that occurred in 1984, when she was seven years old. She stated that she was alone with the [Petitioner] when he removed her underwear, grabbed her and put her over a chair. She testified to many other incidents that occurred over the course of the next seven years. She also testified that during each of these incidents, [Petitioner] threatened to "Do this to her little sisters." She had already stated on direct examination that she has two younger sisters, and one of whom is four years younger than her.
>
> [The victim] testified that she did not tell anyone about these incidents until she was a sophomore in high school. She did not tell anyone else until she was a freshman in college, when she told her roommate and her boyfriend. Soon thereafter she told her parents.
>
> The [Petitioner] was arrested on October 12, 1996 inside the Philadelphia International Airport. [The victim] was present for the arrest. The arresting officer identified himself, the [Petitioner] looked around, spotted the complainant and asked the officer, "Is this for rape?"

*District Attorney's Response to Habeas Petition* [Docket Entry No. 16][3]: Exhibit "A" (February

3, 2000 Superior Court Opinion) at pp. 1-2.

On March 6, 1998, Petitioner was sentenced to a mandatory sentence of not less than five

(5) years nor more than ten (10) years on the charge of involuntary deviate sexual intercourse and

not less than four (4) nor more than eight (8) years for attempted involuntary deviate sexual

---

[2] Petitioner was found not guilty of rape, statutory rape, unlawful restraint, and false imprisonment. *Id.*

[3] Hereinafter "District Attorney's Response."

intercourse, to run consecutively to the first sentence.  There was no further penalty imposed for indecent assault, corruption of minors, or indecent exposure.  Petitioner filed a motion for reconsideration of sentence, which was granted by the Court on April 2, 1998.  Petitioner's sentence on the attempted involuntary deviate sexual intercourse charge was vacated and he was re-sentenced to a minimum of two but not more than eight years to run consecutively to the five to ten year sentence previously imposed.  *District Attorney's Response*: Exhibit "A" (February 3, 2000 Superior Court Opinion) at pp. 2-3.

Petitioner appealed his sentence to the Pennsylvania Superior Court.  He raised three issues: (1) the trial court erred in denying his motion to suppress oral statements; (2) the verdict was based on insufficient evidence; and (3) the verdict was contrary to the weight of the evidence.  *Id.*  His counsel filed an *Anders* brief[4] and a petition to withdraw.  On February 3, 2000, the Superior Court, upon independent review of the record, concluded that the appeal was wholly frivolous, affirmed the lower court, and granted counsel's petition to withdraw.  *Id.* at pp. 10-11.

Petitioner did not seek *allocatur* review in the Pennsylvania Supreme Court.

On April 19, 2000, Petitioner filed a *pro se* motion for relief under the Pennsylvania Post Conviction Relief Act ["PCRA"][5], asserting various claims of ineffective assistance of counsel at both the trial and appellate levels.  *State Court Records*: PCRA Petition [identified as "D-10" in the lower right hand corner] at two pages inserted after page 3.

---

[4]     *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).

[5]      42 Pa.C.S.A. §9541 *et seq.*

Counsel was appointed to represent Petitioner; he filed an amended petition. On August 16, 2001, the PCRA Court found the issues raised to be without merit and dismissed Mr. Zuniga's PCRA petition. *State Court Records:* Docket Entries at 8/16/01.

On August 12, 2002, Petitioner filed a "Motion To Reopen The Previously Filed PCRA Petition And Motion For Leave To File A New Notice Of Appeal In the Instant Matter Pursuant To *Commonwealth v. Sullivan*, 371 A.2d 468, Pa. 1977 Regarding Ineffective Assistance Of Appellate Counsel Pursuant To Post Conviction Relief Act." *State Court Records*: Motion To Reopen [identified as "D-18" in the lower right hand corner].

On August 21, 2002, the PCRA Court denied the motion to reopen, holding that the issues raised in the motion (which related to appellate counsel's *Anders* brief) had been discussed on direct appeal by the Pennsylvania Superior Court. *State Court Records*: August 21, 2002 Order [identified as "D-17" in the lower right hand corner].

Petitioner appealed the August 21, 2002 Order to the Pennsylvania Superior Court. In an August 10, 2004 Opinion, the Superior Court concluded that the Motion to Reopen was a second PCRA petition, which was untimely. As Petitioner neither alleged nor pleaded any of the exceptions to the PCRA timeliness requirements, the Superior Court held that Petitioner was not entitled to relief, and affirmed the judgment of sentence. *District Attorney's Response*: Exhibit "B" (August 10, 2004 Superior Court Opinion) at pp. 2-4.

Petitioner did not seek discretionary review in the Pennsylvania Supreme Court.

**B.  Mr. Zuniga's Parole History**.

Petitioner's minimum sentence date expired on October 13, 2003; his maximum sentence date expires on October 13, 2014.  *Attorney General's Response to Habeas Petition* [Docket Entry No. 8][6]: Exhibit "D1."  Petitioner, who is a citizen of Columbia, has a detainer by the Immigration and Naturalization Service of the Department of Justice.  *Id:* Exhibit "D4."

Since the expiration of his minimum sentence, the Pennsylvania Board of Probation and Parole ["PBPP"] has reviewed Petitioner for parole on three separate occasions: July 14, 2003, July 15, 2005 and September 28, 2006.  Each time, the PBPP determined, in the exercise of its discretion, that Petitioner's best interests do not justify or require his being paroled, and that the interests of the Commonwealth will be injured if Petitioner were to be paroled.  The reasons given in support of the parole denials included, *inter alia*:

> Petitioner's interview with the hearing examiner and/or board member.
> Petitioner's unacceptable compliance with prescribed institutional programs.
> Petitioner's denial of the nature and circumstances of the offense(s) committed.
and   Petitioner's need to participate in and complete additional institutional programs.

*Attorney General's Response:* Exhibit "D2" and "D3", and *Petitioner's Request to Amend Habeas Petition* [Docket Entry No. 22]: Exhibit "A."

On August 8, 2005, Petitioner mailed a "Petition for Administrative Relief" to the PBPP.  In this document, Petitioner challenges the July 14, 2003 and July 15, 2005 parole denials, raising due process and *ex post facto* claims.  *Petitioner's Reply to Attorney General's Response* [Docket Entry No. 12]: "Exhibit 1."  *See Attorney General's Sur-Reply* [Docket Entry No. 13] at p. 2.

---

[6]   Hereinafter "Attorney General's Response."

C.  **Habeas Claims.**

On October 5, 2005, Mr. Zuniga signed and dated his original habeas petition; it

was filed in this Court on October 24, 2005.  *Petitioner's Habeas Petition* [Docket Entry

No. 1].[7]  Petitioner filed an amendment to his habeas petition on November 9, 2005, and

again on August 7, 2006.  *Petitioner's Amendments to Habeas Petition* [Docket Entry

Nos. 4 and 19].  Both times, I permitted Petitioner to include additional habeas claims.

In his habeas petition, as amended, Mr. ZUNIGA asserts the following grounds for relief:

> 1.  Whether the PBPP rendered decisions in Petitioner's case that resulted in a violation of due process of law?
> 2.  Whether the PBPP rendered decisions in Petitioner's case that resulted in a violation of the ex post facto clause?
> 3.  Whether Petitioner should be excused from exhausting state court remedies?
> 4.  Whether the conviction was obtained through a judicial amendment of the charging information?
> 5.  Whether the conviction was obtained in violation of due process of law?
> 6.  Whether the state trial court had jurisdiction to enter conviction or impose a sentence in a criminal matter?
> 7.  Whether this Honorable Court should permit Petitioner to pass through the AEDPA gateway and be heard due to Petitioner's being innocent of this crime?
> 8.  Whether the PBPP's decision rendered on 9/28/06 violates Petitioner's due process rights?
> 9.  Whether the PBPP's decision rendered on 9/28/06 is arbitrary and capricious?

*Habeas Petition: Brief in Support* at p. 2; *Amendment to Habeas Petition* [Docket Entry No. 4]:

*Memorandum of Law in Support* at p. 2; and *Petitioner's Request to Amend Habeas Petition*

[Docket Entry No. 22] at p. 3.

---

[7]   For the purposes of this Report and Recommendation, under the prison mailbox rule, I will accept the earliest date, October 5, 2005, as the date of filing.  *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

## II.  THRESHOLD ISSUES: CLAIMS RELATED TO CONVICTION AND SENTENCE.

In his fourth, fifth, sixth and seventh habeas claims, Petitioner challenges his 1997

conviction and sentence.

### A.  Legal Standards.

The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA" or the "Act"],

signed into law on April 24, 1996, significantly amended the laws governing habeas corpus

petitions.

One of the amended provisions, 28 U.S.C. §2244(d), imposes a one-year statute of

limitations on state prisoners who seek federal habeas relief.  A habeas petition must be

filed within one year from the date on which the petitioner's judgment of conviction becomes

final.  *See* 28 U.S.C. §2244(d)(1).[8]

In the instant case, Mr. Zuniga's conviction became final on March 3, 2000, when the

time for seeking *allocatur* in the Pennsylvania Supreme Court (30 days) expired.  *See*

Pa.R.App.P. 1113(a)(petition for allowance of appeal shall be filed within thirty days from the

entry of the order of the Superior Court sought to be reviewed).  *See e.g., Harris v.* Vaughn, 129

---

[8]     While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitation period to run from four different points in time, depending on which occurs latest.  In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  *See* 28 U.S.C. §2244(d)(1)(A)-(D).  There is nothing in the pleadings before me to suggest that the start date for the statute of limitations period should be permitted to run from a point later in time than the date on which Mr. Zuniga's conviction became final.

Fed.Appx. 684, 685 (3d Cir. 2005)(where petitioner did not file an *allocatur* petition in the

Pennsylvania Supreme Court, his judgment of conviction became final thirty days after the

Superior Court affirmed his convictions) and *Lopez v. Rozum*, CA No. 04-5908, 2005 WL

1322515 at *3 (E.D. Pa. June 1, 2005)(petitioner's judgment of conviction became final when the

time for seeking allowance of appeal in the Supreme Court of Pennsylvania on direct appeal

expired).  Thus, Petitioner's habeas statute of limitations began on March 4, 2000, and absent any

tolling, expired one year later on March 3, 2001.

                1.  Statutory Tolling.

The AEDPA amendments include a tolling provision for "the time during which a

properly filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending."  *See* 28 U.S.C. §2244(d)(2).

Petitioner's habeas statute of limitations began on March 4, 2000, and continued to run

until April 19, 2000, when Petitioner filed his first timely petition for collateral relief in the

PCRA forum.  As of April 19, 2000, approximately one month (46 days) of Petitioner's AEDPA

one-year statutory period had run.

The statute of limitations period was tolled during the entire time that Mr. Zuniga's first

PCRA petition was pending (from April 19, 2000 through September 16, 2001), when the thirty

day period for seeking *allocatur* review in the Pennsylvania Supreme Court expired.  On

September 17, 2001, the remainder of Petitioner's statutory period (319 days) began to run, and

expired on or about August 1, 2002.  The instant habeas petition (filed on October 5, 2005) was

filed more than three years after the statutory deadline.  It is, therefore, untimely.

Petitioner's second PCRA petition was filed almost a month after his federal statute of limitations had expired, and was determined to be untimely by the state court.  This second PCRA petition cannot, therefore, be the basis for any tolling of the statutory limitations period. *Id*.

The instant habeas petition was not filed for over three years beyond the habeas deadline, and does not meet the requirements for statutory tolling under 28 U.S.C. §2244(d)(2).

### 2.  Equitable Tolling.

§2244's one-year statute of limitations is subject to equitable tolling.  However,

> "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'  Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' Moreover, to be entitled to equitable tolling, '[t]he petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.'  Mere excusable neglect is not sufficient."

*Brown v. Shannon*, No. 01-1308, 2003 WL 1215520 at *4 (3d Cir. March 17, 2003)(citations omitted).

Equitable tolling necessarily entails a showing that there is a basis to invoke equity.  The habeas petitioner must establish that he exercised reasonable diligence in pursuing his actual innocence claim.  *Horning v. Lavan*, 197 Fed. Appx. 90, 93-94 (3d Cir. 2006)(not precedential).

The question of whether there is an "actual innocence" exception to the AEDPA statute of limitations has not yet been decided by either the United States Supreme Court or the Third Circuit.  *See, e.g., Id.* at 93 (3d Cir. 2006)("we have yet to hold that the AEDPA statute of limitations can be equitably tolled on the basis of actual innocence."); *LaCava v. Kyler*, 398 F.3d 271, 274 n.3 (3d Cir 2005)(declining to address whether petitioner's actual innocence claim

could overcome the AEDPA time bar) and *Hussman v. Vaughn*, 67 Fed. Appx. 667, 2003 WL 1924693 at *2 (3d Cir.)(finding that the petitioner had no basis to assert a claim of actual innocence and declining to address the issue of whether there is an actual innocence exception to the habeas statute of limitation)(not precedential), *cert. denied*, 540 U.S. 930 (2003).

Assuming *arguendo* that there is such an exception to the AEDPA statute of limitations, in order to establish actual innocence,

> "a habeas petitioner must 'persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' *Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir. 2002)(quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Actual innocence means 'factual innocence, not mere legal sufficiency.' *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The Supreme Court has required a petitioner 'to support his allegations of constitutional error with *new reliable evidence* – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.' *Schlup*, 513 U.S. at 324, 115 S.Ct. 851 (emphasis added); *see also Cristin*, 281 F.3d at 420. 'Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.' *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *see also Wertz v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000)(noting that the actual innocence exception 'will apply only in extraordinary cases.')."

*Sweger v. Chesney,* 294 F.3d 506, 522-23 (3d Cir. 2002), *cert. denied*, 538 U.S. 1002 (2003).

## B.  Claims Related to Petitioner's Conviction and Sentence Are Untimely.

In the instant case, Mr. Zuniga argues that he is "innocent of this conviction due to it never being charged in the indictment." *Amendment to Habeas Petition* [Docket Entry No. 4] at p. 4.  He further argues:

> [E]quitable tolling should apply in petitioner's case due to, the sudden death of the attorney that represented petitioner in his state court proceedings.  See Attached Exhibit No. 1.  Thus, petitioner is submitting that he has been prevented in an extraordinary way from bringing his innocence claim to this court thus, the death

of his attorney as well as, petitioner was attempting to exhaust in the state court on a motion to re-call the mandate petitioner exercised due diligence in good faith. See: <u>Baker v. Horn</u>, 383 F. Supp.2d 720 (E.D. Pa. 2005), where this court stated, (in part), "The obligation to exercise due diligence in bringing claims that is a prerequisite for application of equitable tolling exists during the period (the petitioner) is exhausting state court remedies as well.  Citing <u>Lacava v. Kyler</u>, at 745-746; <u>Baker</u>, supra, and <u>Pace</u> at 745-746, <u>Baker</u> supra.

*Id.* at p. 17.

Petitioner's "Exhibit No. 1" is a copy of a document entitled: "Important Announcement To All Clients Of Daniel C. Furman, THE FURMAN LAW FIRM and The Freedom Forum Of New York City."  This document is dated August 23, 2004, and announces the passing of Daniel C. Furman, due to a sudden heart attack.  *Amendment to Habeas Petition:* Exhibit No. 1.

A review of Petitioner's state court records shows that his "Motion to Reopen Previously Filed PCRA Petition" (dated August 12, 2002) was filed "in propria persona with assistance from Sara Goldman, Esquire, A Pro Bono Attorney with the **Freedom Forum of New York City.**" *State Court Records:* Motion to Reopen [emphasis in original].  The Superior Court docket entries list Mr. Zuniga and Daniel Furman under Appellant Attorney Information.  *Id.*: Appeal Docket Sheet, Docket Number: 1019 EDA 2003 at p. 2.

Even assuming that this Court were to permit equitable tolling of the AEDPA statute of limitations when a viable claim of actual innocence was presented, Mr. Zuniga's claim of actual innocence would nevertheless fail because: (1) he is asserting legal and not factual innocence; (2) Petitioner has not shown that he exercised reasonable diligence in raising his claim of actual innocence before the statute of limitations expired.  The sudden death of Petitioner's appellate counsel occurred several days after the deadline for filing a timely habeas petition expired.  In addition, it appears that while Petitioner has asserted that he did not commit the crimes as

11

charged, he has never raised a claim of actual innocence in the state court system, nor he has

offered any explanation for raising this claim for the first time more than three years after the

habeas statutory period ended; and (3) Petitioner has not offered any "new reliable evidence" in

support of his actual innocence assertion.  *See House v. Bell*, 126 S.Ct. 2064, 2077 (2006)(to be a

credible gateway claim, the *Schlup* standard requires "new reliable evidence – whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –

that was not presented at trial.").

　　　　Under the circumstances of this case, Petitioner has not presented new, reliable evidence

(and there is no evidence of record) to support a finding that he can meet the very high burden of

proof needed to justify equitable tolling.

　　　　Petitioner's habeas claims challenging his conviction and sentence (four, five, six and

seven) are untimely and not entitled to either statutory or equitable tolling.

### III.  THRESHOLD ISSUES: CLAIMS RELATED TO PAROLE DENIALS.

　　　　Petitioner presents five overlapping parole related claims.  He argues that all three of his

parole denials (July 14, 2003, July 15, 2005, and September 28, 2006) violate due process and *ex

post facto* protections, and that any failure to exhaust his parole related claims should be excused.

### A.  Petitioner's *Ex Post Facto* Claim Is Unexhausted And He Is Not Excused From the Exhaustion Requirement.

　　　　As Petitioner himself acknowledges, his parole related claims have not been exhausted.

*Petitioner's Reply to Attorney General's Response* [Docket Entry No. 12] at ¶5 ("Petitioner first

submits, he did attempt to exhaust with PBPP but was not able to, the PBPP never responded to

the petition for review. [ . . . ]  Petitioner submits, exhaustion should be excused in petitioner's

case pursuant to 28 U.S.C. §2254(b)(1) due to there being 'an absence of available State corrective process,' circumstances exist that render such process ineffective to protect the rights of petitioner.  Courts use the terms 'futile' or 'futility' in referring to these exceptions to exhaustion.").

The exhaustion rule, codified in 28 U.S.C. §2254, generally requires a federal court to postpone habeas corpus jurisdiction until "the applicant has exhausted the remedies available in the courts of the State."  The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of state judicial proceedings.  *Rose v. Lundy*, 102 S. Ct. 1198, 1203 (1982); *Castille v. Peoples*, 489 U.S. 346, 349 (1989).

In order to demonstrate compliance with the exhaustion requirement, a habeas petitioner must show that each claim which forms the basis of his federal habeas petition has been "fairly presented" to the state courts.  *Castille*, 489 U.S. at 351 (1989) and *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Absent exceptional circumstances, the petitioner must first present all of his constitutional claims in the state system, through the highest state tribunal, before seeking relief in federal court.  *Picard*, 404 U.S. at 275 (1971) and *Swanger v. Zimmerman*, 750 F.2d 291 (3d Cir. 1984).  The burden is on the habeas petitioner to establish that he has fairly presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system.  *Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir.)(*quoting Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992), *cert. petition dismissed*, 506 U.S. 1089 (1993), "[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts . . . and

the same method of legal analysis must be available in the state court as will be employed in the federal court."), *cert. denied*, 537 U.S. 1049 (2002).

An exception to the habeas requirement exists, when there is no corrective state process available or existing circumstances render such process ineffective to protect the prisoner's rights. The Third Circuit has held, under the futility doctrine, that the exhaustion requirements are satisfied when a state's procedural rules prevent a petitioner from seeking further relief in the state courts. *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005).

In this Circuit, the futility doctrine does not extend to a prisoner who raises an *ex post facto* challenge to the denial of parole for the first time in the habeas forum. "Likely futility on the merits does not excuse a failure to exhaust the claim in state court." A habeas petitioner cannot bypass the state courts and claim exhaustion on the ground that there appears to be no possibility of success on the merits of his claim in state court. *Id.* at 62-63 (3d Cir. 2005).

In the instant case, I find that Petitioner has not exhausted his *ex post facto* claim because he has not completed the state process. "In Pennsylvania, an inmate who challenges Parole Board decisions on constitutional grounds can only do so with respect to *Ex Post Facto* Clause challenges, and then only by seeking mandamus from the Pennsylvania Commonwealth Court." *Williams v. Martinez*, 2006 WL 2588726 at *4 (E.D. Pa. September 7, 2006)(*citing DeFoy v. McCullough*, 393 F.3d 439, 445 (3d. Cir. 2005)). Likely futility on the merits of his *ex post facto* claim does not excuse Petitioner's failure to exhaust.

14

**B.  Petitioner's Due Process Claim is Properly Before This Court.**

The Third Circuit has held that prisoners who challenge the denial of parole on constitutional grounds other than the *ex post facto* clause are not required to file a petition for writ of mandamus in state court in order to satisfy the habeas exhaustion requirements.  *DeFoy v. McCullough*, 393 F.3d 439, 445 (3d Cir.), *cert. denied*, 125 S.Ct. 2970 (2005).  Thus, the exhaustion requirement of 28 U.S.C. §2254(b)(1) does not preclude me from reaching the merits of Petitioner's due process claim.

**C.  Petitioner Presents A Mixed Habeas Petition Which Will Be Addressed On The Merits.**

Traditionally, a federal district court may not adjudicate a mixed petition for habeas corpus, that is, a habeas petition containing both exhausted and unexhausted claims.  The United States Supreme Court has imposed a "total exhaustion" requirement, directing the federal courts to effectuate this requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present unexhausted claims to the state courts in the first instance.  *Rhines v. Weber*, 544 U.S. 269, 273-74 (2005).

However, in limited circumstances, a federal court may stay the habeas petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims.  Once the habeas petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.  *Id.* at 275-76.  The "stay and abeyance" procedure is

> only appropriate when the district court determines there is good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly

meritless. [citation omitted].  Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA.  A mixed petition should not be stayed indefinitely. [ . . . ] Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review.  Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back.  *See, g., Zarvela*, 254 F.3d at 381 ('[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed').  And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.

*Id.* at 277-78.

Where a petitioner presents a mixed habeas petition, and the district court determines that stay and abeyance is inappropriate, "the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.  See *id. [Lundy],* at 520, 102 S.Ct. 1198 (plurality opinion)('[A petitioner] can always amend the petition to delete the unexhausted claims, rather than return to state court to exhaust all of his claims')."  *Id.* at 278.

Notwithstanding the exhaustion requirements, "an application for a writ of habeas corpus may be denied on the merits."  *Bronshtein v. Horn,* 404 F.3d 700, 728 (3d Cir. 2005)("Under 28 U.S.C. §2254(b)(2), we may reject claims on the merits even though they are not properly exhausted"), *cert. denied,* 126 S.Ct. 1320 (2006).

Under the circumstances of this case, I believe that the stay and abeyance procedure is inappropriate, and that Petitioner's due process and *ex post facto* claims should be addressed, and rejected, on the merits.

### IV.  MERITS OF PAROLE RELATED CLAIMS.

**A.  Habeas Standard Of Review.**

Petitioner's habeas petition was filed after the effective date of AEDPA.  The amended habeas standards apply to his habeas claims.  AEDPA precludes habeas relief on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.

28 U.S.C. § 2254(d)(Supp. 1998).

"'[C]learly established Federal law' under §2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *Id.* at p. 73 (2003)(*quoting Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable.

*Id.* at p. 75 (2003)(*quoting Williams v. Taylor*, 529 U.S. at 409-413 (2000)).

With respect to §2254(d)(2), the burden is on the petitioner to establish that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. *Campbell v. Vaughn*, 209 F.3d 280, 290-91 (3d Cir. 2000), *cert. denied*, 531 U.S. 1084 (2001).

> "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. Yet "deference does not imply abandonment or abdication of judicial review. In other words," [d]eference does not by definition preclude relief."

*Lambert v. Blackwell,* 387 F.3d 210, 234-235 (3d Cir. 2004)(*quoting Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)), *cert denied,* 125 S.Ct. 2516 (2005).

### B.  Petitioner Is Not Entitled To Habeas Relief On His Due Process Claim.

In denying Mr. Zuniga parole, the PBPP has cited his failure to participate in DOC programs for incarcerated sex offenders and his denial of the nature and circumstances of his offenses. *Attorney General's Response:* Exhibit "D2" and "D3", and *Petitioner's Request to Amend Habeas Petition* [Docket Entry No. 22]: Exhibit "A."[9]

 Petitioner argues that the PBPP's requirement to admit guilt, will force him to

> provide evidence against himself thus, forever giving up his right and efforts to demonstrate his innocence in any post-conviction proceedings thus, in violation of due process of law under the <u>Fifth Amendment to the U.S. Constitution.</u> [ . . . ] As well as, petitioner will not be able to challenge his innocence in the habeas corpus proceeding pending in this Honorable Court <u>at No. 05-cv-5517.</u>  As such,

---

[9]    "The Pennsylvania Department of Corrections [DOC] requires sex offenders to complete a treatment program in order to receive the prison's recommendation for parole. To participate in the treatment program, an inmate must first admit that s/he as committed a sex offense." *Thorpe v. Grillo*, 80 Fed.Appx. 215, 216 (3d Cir. October 31, 2003)(not precedential), *cert. denied,*124 S.Ct. 2882 (2004).

> petitioner is put in another position, by the PBPP requiring petitioner to admit to
> guilt when in fact, petitioner has consistently denied that he committed these
> crimes thus, this could have the "<u>collateral consequence</u>" of petitioner being
> indicted for perjury.  This was also recognized by the Third Circuit Court of
> Appeals in <u>Defoy</u>, <u>Id. 393 F.3d at 442 at F.N. 3.</u>  As such, this Honorable Court
> should address this due process Fifth Amendment issue.  Petitioner submits, the
> issues in this case are serious.  <u>The Honorable Circuit Judge Weis</u> recognized the
> same in <u>Defoy Id. at 393 F.3d at 448, 449.</u>  As such, the PBPP continued
> requirement that petitioner admit guilt in order to be paroled to detainer is an
> abuse of discretion and is arbitrary and impermissible. [emphasis in original].

*Petitioner's Reply to Attorney General's Response* [Docket Entry No. 12] at ¶6 (pp. 7-8).

Petitioner's due process claim is without merit.  He cannot demonstrate that the Board's

decisions to deny him parole have violated either his procedural or substantive due process

rights.

The Fourteenth Amendment to the United States Constitution provides that a state may

not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const.

Amend. XIV, §1.  The Fourteenth Amendment only requires due process where a state interferes

with a protected liberty interest.  *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 459-60

(1993).  Therefore, Petitioner must demonstrate a deprivation of a liberty interest to validly claim

a violation of his procedural due process rights.

The United States Constitution does not give an inmate a liberty interest in parole

protected by the Fourteenth Amendment.  *Greenholtz v. Inmates of Nebraska Penal and*

*Correctional Complex*, 442 U.S. 1, 7 (1979)("There is no constitutional or inherent right of a

convicted person to be conditionally released before the expiration of a valid sentence.")

A state may, under certain circumstances, create liberty interests which are protected by

the Due Process Clause.  *Sandin v. Conner,* 515 U.S. 472, 484 (1995).  However, "[ . . . ] the

Pennsylvania Supreme Court has long held that 'a denial of parole does not implicate a

constitutionally protected liberty interest.'" *Thorpe v. Grillo*, 80 Fed.Appx. 215, 219 (3d Cir. 2003)(not precedential), *cert. denied,*124 S.Ct. 2882 (2004).  *See Bonilla v. Vaughn*, No. 97-7440, 1998 WL 480833 at *8 (E.D. Pa. August 14, 1998)(because Pennsylvania's parole system grants the Board broad discretion in parole determinations, prisoners in Pennsylvania have no protected liberty interest in the grant of parole).

Because neither the United States Constitution nor Pennsylvania law give Petitioner a constitutionally protected liberty interest in parole, he has not established a violation of his procedural due process rights.

Similarly, Petitioner has not established a violation of his substantive due process rights. A parole denial *can* give rise to a substantive due process deprivation if the denial is based upon constitutionally impermissible reasons.  *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)("a state statute may not sanction totally arbitrary parole decisions founded on impermissible criteria").

> [C]ourts can review the substance of parole decisions, as distinguished from the adequacy of the procedures, to determine whether a parole board exercised its authority arbitrarily. [ . . . ] When presented with [ . . . ] a discretionary scheme, the role of judicial review on application for a writ of habeas corpus "is to insure that the Board followed criteria appropriate, rational and consistent with the statute and that its decision was not arbitrary and capricious nor based on impermissible considerations.  In other words, the function of the judicial review is to determine whether the Board abused its discretion."

*Id.* at pp. 236-237 (*quoting Zannino v. Arnold*, 531 F.2d 687, 690 (3d Cir. 1976)).

"However, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision."  *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).

Petitioner has not established that the PBPP's decisions to deny him parole are arbitrary or founded on impermissible criteria, nor has he established a violation of his Fifth Amendment rights.  The denial of parole based on an Petitioner's failure to participate in a sex offender treatment program does not violate the Fifth Amendment.  Mr. Zuniga was not forced to incriminate himself in a criminal proceeding, and his participation in the sex offender treatment program is voluntary.  Petitioner's refusal to admit his guilt and the resulting inability to participate in the treatment program has not extended his term of incarceration, nor has it automatically deprived him of consideration of parole.  The PBPP has reviewed Petitioner for parole three times since the expiration of his minimum sentence.  It has, in its discretion, considered Petitioner's failure to participate in the sex offender program as one factor in making its parole decisions.  *See Thorpe*, 80 Fed. Appx. at 219-220 (3d Cir. 2003)(the policy of excluding an inmate who failed to admit guilt from the sex offender treatment program necessary for parole consideration did not violate the Fifth Amendment because the inmate was not automatically denied parole and because he was not forced to incriminate himself at trial); *Wolfe v. Pa. D.O.C.,* 334 F.Supp.2d 762, 771-773 (E.D. Pa. 2004)(because participation in the sex offender treatment program is voluntary and the consequences of participating in the program, although unpleasant, do not rise to the level of constitutional infirmity and because the program does not compel the inmates to incriminate themselves in a criminal proceeding, plaintiffs' Fifth and Fourteenth Amendment claims fail); *Williams v. Martinez*, CA No. 06-735, 2006 WL 2588726 at *5-6 (E.D. Pa. September 7, 2006)(denying habeas relief on claim that forcing petitioner to admit guilt as a

requirement for the sex offender program against his will violates the Fifth Amendment right against self incrimination).[10]

Citing to *DeFoy*, Petitioner asserts that if he is forced to admit guilt, he could face "a collateral consequence" of being indicted for perjury because he has "consistently denied that he committed these crimes." He also alleges that he will not be able to pursue a claim of innocence in this forum. *Petitioner's Reply to Attorney General's Response* [Docket Entry No. 12] at ¶6 (pp. 7-8).

The *DeFoy* language cited by Petitioner relates to a narrow exception to the general mootness rule - the collateral consequences doctrine. While a petition for habeas corpus relief generally becomes moot when the prisoner has been released from custody, if the prisoner demonstrates he will suffer collateral consequences if his conviction is allowed to stand, he can establish an "actual injury" and avoid having his habeas petition dismissed as moot. *DeFoy*, 393 F.3d at 441-442 (3d Cir. 2005). The Third Circuit concluded that DeFoy's habeas petition was not moot because the habeas relief requested would affect his release date for the sentence he was currently serving. In the alternative, the Circuit noted that even if DeFoy had been released from prison, the collateral consequences doctrine would prevent a mootness finding, because "[r]equiring DeFoy to admit his guilt after having consistently denied it may have the collateral consequence of his being indicted for perjury." *Id.* at 442 n. 3 (3d Cir. 2005).

_____

[10]       *DeFoy* does not require a different conclusion. The Third Circuit recognized that the alleged practice of making parole for a sex offender contingent on participation in a sex offender treatment program which, in turn, requires an admission of guilt would place the petitioner with an "unenviable choice." However, the Circuit expressed no view at to "the question of the Program's constitutionality." *DeFoy*, 393 F.3d at 445 n. 4 (3d Cir. 2005).

Mr. Zuniga's "potential perjury" claim is speculative.  He has not identified any date on which he testified in court that he was innocent.  My review of the state court records shows that Mr. Zuniga did not testify at trial, he did not testify at sentencing and he did not testify at the hearing on his motion for reconsideration of sentence.  *State Court Records:* N.T. 12/5/97 (trial) at p. 86; N.T. 3/6/98 (sentencing) at p.10; and N.T. 7/13/98 (motion for reconsideration of sentence).  With respect to the alleged limitation in pursuing his innocence in this court, as discussed above, I have found that Petitioner has not met the "very high" burden of proof necessary to justify equitable tolling.  His habeas claims related to his conviction and sentence are time-barred here, and would be equally precluded by the applicable state statute of limitations.  Petitioner has not established an actual injury, and I have difficulty imagining how an admission of guilt at this point would result in any adverse consequences for him.

 Consistent with the above discussion, I find that Petitioner is not entitled to habeas relief on his due process claim.[11]

**C. Petitioner Is Not Entitled To Habeas Relief On His Ex Post Facto Claim**.

Mr. Zuniga makes two *ex post facto* arguments.  First, he asserts that PBPP's decisions denying him parole have "forced" him to enter and participate in programs pursuant to 42 Pa.C.S.A. §9718.1, which was not the law at the time of Petitioner's crimes and convictions. The

---

[11]       To the extent that Petitioner is asserting a due process claim based upon an alleged denial of his request to be transferred to a prison where the sex offender treatment program has a Spanish translator, Petitioner has not shown actual injury.  The documentation provided by Petitioner shows that the staff response to his request for a transfer was not a denial but a statement that Deputy Shutt would talk to the Superintendent of SCI Frackville about Petitioner's transfer request.  Further, Petitioner cannot participate in phase two of the sex offenders treatment program until he admits guilt, which he has not yet agreed to do.  Therefore, this due process claim is without merit.

application of this "new" law, which was not unforeseeable at the time of Petitioner's crimes and convictions, to deny Petitioner parole violates the *ex post facto* Clause. *Habeas Brief* at pp. 4-7. Second, Petitioner contends that the 1996 amendments to the Parole Act, 61 P.S. §331.1, have been retroactively applied to him, leading the PBPP to apply a more stringent standard for his parole due to the nature of Petitioner's crimes. *Petitioner's Reply to Attorney General's Response* at pp. 4-7.

The *ex post facto* clause applies to statutory or policy changes that retroactively alter the definition of a crime or increase the punishment for criminal acts. *California Dept. Of Corrections v. Morales*, 514 U.S. 499, 504-505 (1995).

To be eligible for habeas corpus relief based on a violation of the *Ex Post Facto* Clause, a petitioner must show *both* a retroactive change in law or policy *and* that this change caused individual disadvantage by creating "a significant risk of increasing his punishment." *Richardson v. Pennsylvania Board of Probation and Parole*, 423 F.3d 282, 284 (3d Cir. 2005).

As to the second prong of the *Ex Post Facto* inquiry, Petitioner must establish that the 1996 amendments negatively affected his parole determination. *Richardson*, 423 F.3d at 291-92. *Mickens-Thomas* met this burden by: producing statistical evidence specific to his case, including the fact that out of 266 prisoners whose life sentence was commuted in the recorded history of the Parole Board, he was the only individual whose parole was denied; showing that the Parole Guidelines counseled in favor of parole, and that the Department of Corrections staff had unanimously recommended him for parole; and pointing to the rationale given by the Parole Board for denying him parole, from which the Court inferred that the change in policy after the 1996 Amendments had a significant, if not determinative, effect on Mickens-Thomas' denial of parole. *Id.*

24

The law cited in Petitioner's *ex post facto* claim, 42 Pa.C.S. §9718.1, provides that certain sex offenders will not be eligible for parole unless they have attended and participated in "a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders."   42 Pa.C.S.A. §9718.1(a).  The statute only applies to offenses committed after the effective date of the act - December 20, 2000.  Act 2000-98, Dec. 20, 2000.  This statute does not, therefore, apply to Petitioner.

Petitioner is correct that the PBPP erroneously referred to 42. Pa.C.S.A. §9718.1 in its July 14, 2003 decision, when it cited to: "Your failure to participate in a DOC program of counseling or therapy designed for incarcerated sex offenders as required by 42 Pa.C.S.A. §9718.1." *Attorney General's Response:* Exhibit "D3."  However, this was not the only reason given for the July 2003 decision.  The PBPP determined that it was not in the best interests of Petitioner to be paroled and that the Commonwealth would be injured if Petitioner were paroled, also citing the recommendation made by the DOC and Petitioner's interview with the hearing examiner and/or board member.  *Id.*  I find that Petitioner was not prejudiced by the PBPP's error in its July 2003 decision.  *See Attorney General's Response:* Exhibit "D6" (*Jordan v. State Police*, 2005 WL 697428 at *4).[12]

To the extent that Petitioner is arguing that the PBPP cannot consider whether he has participated in a sex offender treatment program if 42 Pa.C.S.A. §9718.1 is not applicable to his case, Petitioner is incorrect.  Under 61 P.S. §331.19, enacted  (in 1941) well before the date of

---

[12]       Neither the July 15, 2005 nor the September 28, 2006 parole decisions erroneously refer to 42 Pa.C.S.A. §9718.1.  In Petitioner's two most recent parole decisions he was denied parole after the error was corrected, providing further support for the conclusion that the error did not prejudice Petitioner.

Petitioner's crimes and convictions, the PBPP has broad authority to consider the inmate's "general character and background," and his conduct "while in prison and his physical, mental and behavior condition and history," as well as "information regarding the nature and circumstances of the offense committed."  61 P.S.A. §331.21(a).  Consideration of whether a prisoner has participated in, and completed, a DOC program of counseling or therapy for sex offenders is well within the broad discretion of the PBPP.  *Id.*

In his second *ex post facto* argument, Mr. Zuniga argues that the 1996 amendments to the Parole Act have resulted in the PBPP applying a more stringent standard for his parole due to the nature of Petitioner's crimes, and that this retroactive change is unconstitutional.  Petitioner has not met his burden of showing he was individually disadvantaged by the 1996 Amendments.

In December of 1996, the Pennsylvania legislature amended the policy statement of the Parole Act by adding language that stated: "the [B]oard shall first and foremost seek to protect the safety of the public."  61 P.S. §331.1.[13]

---

[13]    Before the 1996 Amendment, §331.1 read:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole of this Commonwealth.
> Act 1941, Aug. 6, P.L. 861, §1 (pre-1996).

*Gonzales v. Wynder*, CA No. 04-5155, 2005 WL 856850 at *3 (E.D. Pa. April 12, 2005).

After the 1996 Amendment, §331.1 reads:

In December 2002, the Pennsylvania Supreme Court, in *Winklespecht* determined that:

> The rewording of 61 P.S. §331.1 did not create a substantial risk that parole would be denied any more frequently than under the previous wording, nor did the addition of this language create a new offense or increase the penalty for an existing offense [ . . . ] Although the language concerning "protect[ing] the safety of the public" and "assisting in the fair administration of justice" was added to §331.1 in 1996, these concepts are nothing new to the parole process and have always been underlying concerns.  Both versions of §331.1 leave the decision regarding the grant of parole within the discretion of the Board; the fact that some language was added in 1996, which clarified the policy underlying the parole process, does nothing that increases [petitioner's] punishment.

*Winklespecht*, 813 A.2d 688, 691-92 (Pa. 2002).

Petitioner has failed to demonstrate that the Parole Board gave the 1996 amendments inappropriate or controlling weight in its decisions to deny him parole.  He offers no evidence that but for the 1996 amendments, he would have been released on parole.

First, all three of the challenged parole denials occurred well after the *Winklespecht* decision, giving the PBPP the benefit of the Pennsylvania Supreme Court's analysis of the 1996 amendments, and its determination that the change in the statutory language of §331.1 did not constitute an abandonment of the criteria previously considered by the Board in making parole decisions.

---

The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.  In providing these benefits to the criminal justice system, *the board shall first and foremost seek to protect the safety of the public.*  In addition to this goal, the board shall address input by crime victims and *assist in the fair administration of justice* by ensuring the custody, control and treatment of parole offenders. 61 P.S. §331.1 (emphasis added)(post-1996).

*Id.*

27

Additionally, in all three parole decisions, the PBPP stated numerous factors which it considered in denying parole, many of which are factors referenced in the Parole Act since its inception in 1941.  The Board cited Petitioner's denial of the nature and the circumstances of the crimes committed; Petitioner's failure to accept responsibility and his lack of remorse; his interview with the hearing examiner and/or Board member; and Petitioner's unacceptable compliance with prescribed DOC programs.  *Attorney General's Response:* Exhibit "D2" and "D3", and *Petitioner's Request to Amend Habeas Petition* [Docket Entry No. 22]: Exhibit "A." The reasons given for denial of parole by the PBPP are not outside the Board's broad discretion.

None of Petitioner's arguments demonstrate that he faces an increased risk of incarceration based on the 1996 amendments.  His assertion that the 1996 amendments violated the *Ex Post Facto* clause, without actual evidence to back up that assertion, is without merit.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING.  It is further recommended a finding be made that there is no probable cause to issue a certificate of appealability.

BY THE COURT:

S/ M.  Faith Angell

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE